## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KEITH LAMBING,

               Plaintiff

     v.

SUPERINTENDENT RANSOM, *et al.*,

            Defendants.

CIVIL ACTION NO. 3:25-CV-01873

(MEHALCHICK, J.)

## MEMORANDUM

Keith Lambing has filed a complaint alleging that he was he was attacked by other inmates while incarcerated at SCI-Dallas, and that six defendants affiliated with the prison failed to protect him from these attacks or permit him appropriate medical care. Pursuant to 28 U.S.C. § 1915A, the Court will permit Lambing to proceed on Eighth Amendment failure-to-protect claims against two defendants, but allow him to file an amended complaint prior to service.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Lambing's complaint (Doc. 1) alleges as follows: On December 8, 2023, Lambing was moved from the Restricted Housing Unit into the general population at SCI-Dallas. While he awaited a cell assignment, he overheard officers Mr. Bilby and Mr. Silva "discussing some lies and rumors" about him. These officers allegedly "indicat[ed] to each other and to other inmates on the block/unit openly that [Lambing] was a 'rat' (snitch), and a 'child molester' (rapist)." Lambing alleges that "all the problem inmates on the block/unit believed" the officers' comments.

Belby allegedly told Lambing that "in order to live on this block/unit the inmates would need to see [Lambing's] paperwork," including his criminal charge sheet. Several inmates surrounded Lambing, "demanding that [he] show them [his] paperwork." When Lambing went to retrieve his paperwork, he was "approached aggressively by several inmates," who shouted "we already know who you are" and called him a rat and a child molester. These inmates "[p]unched [Lambing] in the face in plain view" of Bilby and Sergeant Henderson. The officers "made no effort to intervene" and did not file a report of the incident. Lambing returned to his cell, where he "request[ed] several times to see a doctor . . . to no avail." When Lambing left his cell later that day, he was "attacked and physically assaulted by some inmates once again for a second time[,] receiving no assistance from the officers/defendants at all."

The following day, December 9, at 10:45 a.m., "the block officer Mr. Schmidt or Mr. Rushton repeatedly kept opening [Lambing's] cell door . . . demanding [him] to come out and fight." Lambing closed his door and attempted to secure it by jamming it with toilet paper. Despite this, an unnamed inmate "snatched [the] cell door open and ran into [the] cell[,] apparently at the behest of the block officers[,] and physically assaulted" Lambing, causing him a head injury that required stitches. The "constant harassment" and assaults caused Lambing "severe emotional and mental tra[u]ma." On an unspecified date, he attempted to hang himself. He was escorted by a lieutenant to the medical department, given a neck brace, and later sent to the hospital. After returning from the hospital, he was placed in a Psychiatric Observation Cell for four days, then placed in a different cell block.

Lambing asserts Eighth Amendment liability based on failure to protect, failure to intervene, and deliberate indifference to a serious medical need, against correctional officers

Henderson, Bilby, Silva, and Chapman.[1] He also names Kevin Ransom, the former Superintendent of SCI-Dallas, and Ricardo Cantreas, a Deputy Superintendent at SCI-Dallas, although it is unclear what claims he intended against them.[2]

## II.    28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first

---

[1] The complaint repeatedly refers to "Mr. Ciprian," another correctional officer, but even assuming he was intended as a defendant, any claim against him would fail for the reasons described below.

[2] Former Superintendent Kevin Ransom died before this complaint was filed. *See Craig v. Wetzel*, No. 1:21-CV-02020, 2025 WL 2699101, at *1 n.1 (M.D. Pa. Sept. 22, 2025). The Deputy Superintendent is Ricardo Contreras, *see* https://www.pa.gov/agencies/cor/state-prisons/sci-dallas (last visited Oct. 24, 2025), but for consistency with the docket, this memorandum reflects the spelling used in the complaint.

take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

4

the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III. DISCUSSION

### A. SECTION 1983

Lambing's claims of constitutional violations fall under 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established

elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207). Moreover, "[a]lleging personal involvement cannot be accomplished by repeatedly and collectively referring to the 'Defendants' as a group without clarifying the specific acts of each Defendant that forms the basis for that individual's liability." *Graham v. Moon Lodge Chips Corp.*, No. 24-CV-0124, 2024 WL 3275960, at *5 (E.D. Pa. July 1, 2024) (citing *Lawal v. McDonald*, 546 F. App'x 107, 113-14 (3d Cir. 2014)).

These principles foreclose liability as to Ransom, Cantreas, and Chapman, none of whom is specifically identified as having any personal involvement in Lambing's assaults, the response to those assaults, or his medical care. Thus, the Court's analysis is primarily directed to the remaining three defendants: Bilby, Silva, and Henderson.

B. "FAILURE TO PROTECT/FAILURE TO INTERVENE"

First, Lambing asserts a single claim that he labels "failure to protect/failure to intervene." In general, "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). To state a failure-to-protect claim under the Eighth Amendment, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and the prison

official must exhibit deliberate indifference, meaning that the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer, 511 U.S.* at 837. Because of the stigma associated with being labeled a "rat," "snitch," or sex offender in prison, these labels can themselves create a substantial risk of harm that requires special protection. *See*, *e.g.*, *Moore v. Mann*, 823 F. App'x 92, 96 (3d Cir. 2020); *Drummond v. Angelucci*, No. 23-CV-4767, 2024 WL 2136284, at *10 (E.D. Pa. May 10, 2024); *Easley v. Tritt*, No. 1:17-CV-930, 2021 WL 978815, at *13 (M.D. Pa. Mar. 16, 2021). Here, Bilby and Silva allegedly knew that other inmates perceived Lambing as a snitch and a child molester, because they allegedly discussed it with the inmates. It is plausible to infer that Lambing was vulnerable to attack by other inmates for that reason. "[T]his risk was or should have been sufficiently obvious to a prison official . . . that the Court can infer the requisite mental state at this early stage." *Drummond*, 2024 WL 2136284, at *10 (citing *Kedra v. Schroeter*, 876 F.3d 424, 442 (3d Cir. 2017)). Therefore, Lambing may proceed on a failure-to-protect claim against those two defendants, even if they did not specifically know in advance who would attack him or how.[3] *See Farmer*, 511 U.S. at 843 ("[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."). However, Lambing's statement that one of his assaults was "apparently at the behest" of unnamed officers does not support a claim, because he does not plead any facts to support

---

[3] Lambing also alleges that on another occasion, "Mr. Schmidt or Mr. Rushton" opened his cell door and "demand[ed that he] come out and fight." However, neither officer is named as a defendant. Moreover, given that Schmidt and Rushton are not alleged to be aware of Lambing's alleged "snitch" or sex offender status, or Lambing's prior confrontations with prisoners, the complaint lacks sufficient detail to infer deliberate indifference from this single ambiguous remark.

that speculative inference. *See Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) ("unsupported conclusions and unwarranted inferences" do not state a claim).

Turning to Lambing's claims of failure to intervene, an officer may be liable for failure to intervene in an incident of violence against a prisoner if the attending officer "had a reasonable opportunity to intervene and simply refused to do so." *See Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). Factors that suggest a "reasonable opportunity to intervene" may include "the temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, [and] the ability of the non-intervening officer to perceive and/or hear the alleged assault." *See Kates v. Packer*, No. 3:13-CV-01525, 2018 WL 724444, at *5 (M.D. Pa. Feb. 6, 2018) (citations omitted). While Lambing repeatedly recites that various defendants "failed to intervene" in his assaults, he has not described the incidents in a way that suggests any defendant had a reasonable opportunity to intervene. He alleges that multiple inmates punched him in "plain view" of Bilby and Henderson, but that bare allegation does not plausibly suggest that the officers had a realistic opportunity to stop him from being punched even assuming that they saw the incident(s). *See*, *e.g.*, *D'Alfonso v. Reddinger*, No. 1:21-CV-280, 2023 WL 6215023, at *6 (W.D. Pa. Sept. 25, 2023) ("a quick series of punches . . . is precisely the type of brief and spontaneous attack" for which there is no reasonable opportunity to intervene). General accusations that all defendants "stood by and did nothing," or "instigated" and "encouraged" the assaults (Doc. 1, ¶¶ 21-23) are insufficient; Lambing must specifically explain the facts that show how each individual defendant had a reasonable opportunity to intervene. Accordingly, these claims will be denied without prejudice to clarified allegations in an amended complaint.

C.  MEDICAL CARE

Next, Lambing seeks to assert claims of deliberate indifference to a serious medical need. A plaintiff can state a claim under the Eighth Amendment by alleging (1) a serious medical need; (2) that the defendant was deliberately indifferent to that need; and (3) that the deliberate indifference caused harm to the plaintiff. *See Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023).

Lambing alleges that he "request[ed] several times to see a doctor . . . to no avail" after the first alleged assault, and received no medical attention until his suicide attempt. Although the Court does not diminish the painful experience that Lambing has described, he has not explained how any individual defendant was deliberately indifferent to his medical needs. He has not specifically alleged that he requested medical care from any individual defendant or otherwise explained how any defendant was personally involved in his medical care.[4] He cannot accomplish this through conclusory allegations of "delay and/or denial of access to medical attention" by all "officers/defendants," or by saying that all defendants were "responsible for the welfare, care, custody, and control" of inmates. *See* (Doc. 1, ¶¶ 5-9, 29-33). Thus, these claims will also be dismissed without prejudice.

D.  ADDITIONAL CLAIMS

The complaint includes stray references to other legal theories, including "equal protection violations under the [F]ourteenth [A]mendment," "unlawful custom of creating a safe environment [for] inmates," and "the torts of assault and battery and negligence."

---

[4] He also does not explain what medical problem he described, or the reactions or responses of the people he asked, in a way that would show they perceived a serious medical need and were deliberately indifferent to it.

However, the complaint does not contain facts showing that Lambing was treated differently from similarly situated prisoners (*see Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016)), or that any treatment he received was the result of an "unlawful custom."

Because the Pennsylvania legislature "has not chosen to waive [sovereign] immunity for intentional torts," *Wicker v. Shannon*, No. 3:09-CV-1629, 2010 WL 3812351, at *9 (M.D. Pa. Sept. 21, 2010) (citing 42 Pa. Con. Stat. Ann. § 8522), any intended claims of assault and battery against these state employees acting in the scope of their employment must be dismissed. *See, e.g., Horseman v. Walton*, No. 1:22-CV-336, 2023 WL 1864882, at *2 (M.D. Pa. Feb. 9, 2023). While Pennsylvania has waived sovereign immunity for "damages arising out of a negligent act" in a variety of situations, claims of negligence based on failure to protect a prisoner from assault would not fall under those categories, and therefore could not proceed. *See* 42 Pa. Con. Stat. Ann. § 8522(b).

## IV.    APPOINTMENT OF COUNSEL

Lambing requests appointment of counsel. Unlike in a criminal case, a prisoner has no constitutional or statutory right to appointed counsel in a civil case. *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Under the *in forma pauperis* statute, however, a federal court may request that an attorney represent an indigent person[5] on a *pro bono* basis. See 28 U.S.C. § 1915(e)(1); see also *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).

Under *Tabron*, a district court's appointment of counsel is discretionary and must be made on a case-by-case basis. *Tabron*, 6 F.3d at 157-58. Appointment of counsel for an

---

[5] Lambing has requested leave to proceed *in forma pauperis* (Doc. 3), and upon review of his prisoner trust fund account statement (Doc. 4), the motion will be granted.

indigent litigant should be made when circumstances indicate "the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984). The initial determination is whether the plaintiff's case has some arguable merit in fact and law. *Montgomery*, 294 F.3d at 499. If a plaintiff overcomes this threshold hurdle, other factors to be examined are:

> (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the claimant to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which the case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.

*Montgomery*, 294 F.3d at 499 (citing *Tabron*, 6 F.3d at 155-57).

Assuming *arguendo* that this case has arguable merit in fact and law, the Court does not find that appointment of counsel would be appropriate at this stage. Lambing claims that he has limited knowledge of the law, and he vaguely asserts that he needs counsel to assist with discovery and unspecified "investigat[ion]" because he has been transferred away from SCI-Dallas. While most *pro se* prisoner litigants would benefit from an attorney, Lambing has not shown that this is a "special circumstance" in which he is unable to "present the facts and legal issues to the court." *Smith-Bey*, 741 F.2d at 26. To the extent Lambing is impeded from necessary discovery or investigation, he may renew his motion during discovery and explain what, specifically, he is unable to do.

Because the defendants have not yet responded to the complaint, it is unclear to what extent the case may rest on credibility determinations, expert testimony, or complex medical issues. To the extent these details become apparent later in the litigation, the Court can reconsider appointment of counsel. *See Woodham v. Sayre Borough Police Dep't*, 191 F. App'x

111, 116 (3d Cir. 2006). However, on the facts presented, Lambing has not demonstrated entitlement to volunteer counsel at this stage.

**V.      CONCLUSION**

Accordingly, Lambing will be permitted to proceed on Eighth Amendment failure-to-protect claims against Bilby and Silva, but all other claims will be dismissed, and Lambing will not be appointed counsel at this stage. Lambing will be granted 30 days in which to file an amended complaint, which must be an entirely new complaint that stands alone without reference to the original complaint. If Lambing does not file an amended complaint, the case will proceed only on his failure-to-protect claims. An appropriate order follows.

Dated: October 24, 2025                              s/ Karoline Mehalchick
                                                     **KAROLINE MEHALCHICK**
                                                     **United States District Judge**